IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ANDREA ORTIZ,

                        Plaintiff,

       vs.

BEVERLY VALASEK, Section 8 Manager;
DONALD E. LOUDNER, Attorney;
DOUGLAS COUNTY HOUSING
AUTHORITY, Housing Authority of Douglas
County Nebraska; State Agency; and
GRETNA CROWN, L.L.C., Real Party in
Interest;

                    Defendants.

**8:24CV170**

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Complaint filed on May 8, 2024.  Filing No. 1.  Plaintiff, a non-prisoner proceeding pro se, has also filed a Motion for Leave to Proceed in Forma Pauperis ("IFP").  Filing No. 2.  Upon review of Plaintiff's IFP Motion, the Court finds that Plaintiff is financially eligible to proceed in forma pauperis.  The Court will now conduct an initial review of Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2).

**I.  SUMMARY OF COMPLAINT**

Plaintiff filed her Complaint against Defendants Douglas County Housing Authority ("DCHA"); Beverly Valasek ("Valasek"), a DCHA Section 8 Manager; attorney Donald E. Loudner ("Loudner"); and Gretna Crown, L.L.C. ("Gretna Crown").  Liberally construed, Plaintiff alleges due process claims under 42 U.S.C. § 1983 and housing discrimination based on disability under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604(b) and 3617, arising out of DCHA's eviction of Plaintiff from her rent-to-own home at 11208 S. 212th

Street, Gretna, Nebraska (the "Rental Property"), within the Gretna Crown public housing development. Filing No. 1 at 3–5, 13.

Beginning in later December 2023, Plaintiff began experiencing financial hardship due to the health issues of her mother Elaine Ortiz ("Elaine"), who resided with Plaintiff in the Rental Property as a "co-head of household." Id. at 5. Plaintiff applied for Emergency Rental Assistance ("ERA") and conveyed this information to Valasek from whom she also requested "supportive services, payment plans, [a] new lease, offered to take out loan, [and] asked for RA Section 8" in order to meet Plaintiff's rent obligations. Id. at 4. Valasek was largely unresponsive to these requests from Plaintiff and was slow in completing the landlord portion of Plaintiff's ERA paperwork. Id. at 5, 14–15. Plaintiff also requested that her rent due date be changed to when Plaintiff and Elaine received their disability check, as well as the installation of a handicap ramp as her mother could not use the stairs, but Valasek refused the request for a different pay date and never responded to Plaintiff's request for a ramp. Id. at 4, 14–15.

Plaintiff received a "14/30" notice from Valasek dated February 14, 2024, informing her that DCHA intended to terminate her lease due to unpaid rent for the months of January and February 2024. Id. at 5, 14; Filing No. 5 at 4–5. Plaintiff requested more time to pay, that Valasek wait until her ERA funding came through, and that Valasek "work with [Plaintiff]," but Valasek "[r]eplie[d] that the 14/30 still stands." Filing No. 1 at 15. Plaintiff alleges she then "complained to Fair Housing, HUD, [and] NEOC," after which "lif[e] got way worse as [Valasek] filed for eviction [March 15, 2024]." Id. at 4.

Plaintiff attached documents to her Complaint showing that a restitution action for the forcible entry and detention of the Rental Property was filed in the County Court of

Sarpy County, Nebraska, in Case No. CI24-1521 (the "Eviction Case").  *Id*. at 7.  The state court records in the Eviction Case, available to this Court online,[1] show that DCHA filed a complaint for restitution and detainer on March 19, 2024, through their counsel, Defendant Loudner.  At Plaintiff's request, her counsel from Legal Aid withdrew, and Plaintiff filed a pro se answer and counterclaim on April 5, 2024, setting forth essentially the same factual allegations contained in the Complaint filed in the present case, including her claims of disability discrimination and retaliation.  A hearing was held on April 23, 2024, after which the Sarpy County Court entered judgment in favor of DCHA and against Plaintiff for restitution of the Rental Property.  The county court entered a writ of restitution on April 29, 2024, ordering Plaintiff's removal from the Rental Property and restitution of the Rental Property to DCHA.  *Id*.  Plaintiff was given notice to vacate the Rental Property by Monday, May 6, 2024, and by all indications was removed from the Rental Property on that date.  *Id*. at 8–10; *see also* Filing No. 5.

Plaintiff appealed the county court's decision to the Sarpy County District Court, Filing No. 1 at 21–22, which dismissed the appeal on August 12, 2024, for lack of jurisdiction, concluding that no final, appealable order had yet been entered as Plaintiff's counterclaim had not been ruled upon by the county court.  The matter was remanded back to the county court, and, on November 8, 2024, the county court stayed the proceedings at Plaintiff's request pending resolution of a Nebraska Equal Opportunity Commission ("NEOC") investigation of Plaintiff's claims of discrimination and retaliation

---

[1] This Court has been afforded access to the computerized record keeping system for the Nebraska state courts.  The Court takes judicial notice of the state court records related to this case in *Douglas County Housing Authority v. Andrea Ortiz, and All Other Occupants, if any*, Case No. CI24-1521, County Court of Sarpy County, Nebraska.  *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records).  Nebraska's judicial records may be retrieved on-line through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi.

related to the Eviction Case. The Eviction Case remains pending as of the date of this Memorandum and Order.

Plaintiff alleges that, as a result of Defendants' actions, her mother's health will likely decline further as Elaine was admitted to the hospital on two occasions after Plaintiff had to go to court in the Eviction Case. *Id*. at 5. Also, she alleges DCHA has "refused [her] rent payments, turned off [her] ability to pay online, but keep[s] charging [Plaintiff] . . . . [and] county court wouldn't let [her] post surety bond." *Id*. As relief in this case, Plaintiff seeks injunctive relief and damages, specifically:

1.) Stop eviction, void order/judgement, seal record, error of judgement. We have not been afforded due process.
2.) Stop DCHA from harassing us. Allow us to pay rent again, including online and any payments from emergency rental assistance previously rejected[.]
3.) Compel performance by DCHA to allow us to purchase our home as always intended or if house is found to be uninhabitable, refund all payment, monies, tender, and rent ever received OR sign title over in fee simple with no liens or encumbrances.
4.) Allow us to immediately install a handicap ramp with a contractor of our choosing so long as ramp meets HUD's Housing Quality Standards.
5.) Order DCHA to release copies of all documents in my tenant file to me, including how rent is calculated, why we never received Section 8, and what programs we are in or funds we have wether [sic] in escrow or prepaid rent.
6.) Pay for mom's two hospital stays, lost wages, opportunity cost, past repairs made by us, pay for actual time spent on this lawsuit at $150/hour so far I have accounted 102 hou[rs] $50,000[.]
7.) Punitive money damages[.]

*Id*.

## II. STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a

claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## III.  DISCUSSION

Liberally construed, Plaintiff asserts disability discrimination and retaliation claims under the FHA, as amended, 42 U.S.C. § 3601–3619,[2] as well as violations of her due process rights under 42 U.S.C. § 1983.[3]    However, due to the pending state court proceedings in the Eviction Case, the Court must first determine whether it has jurisdiction to consider Plaintiff's claims in the first place.  For the reasons that follow, the Court finds that it lacks subject matter jurisdiction over Plaintiff's Complaint.

### A.  *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments and state proceedings.  *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005).  *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).  Specifically, the doctrine "bars federal courts from hearing cases brought by the losing parties in state court proceedings alleging 'injury caused by the state-court judgment and seeking review and rejection of that judgment.'"  *Mosby*, 418 F.3d at 931 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).

---

[2] The FHA "prohibits discrimination, based on handicap, against any person with respect to the rental of a dwelling or the provision of related services or facilities."  *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363 (8th Cir. 2003) (citing 42 U.S.C. § 3604(f)(2)).  A person subjected to discrimination in violation of the FHA can bring a private cause of action for damages.  42 U.S.C. § 3613; *Neudecker*, 351 F.3d at 363.  "[A]n action brought for compensation by a victim of housing discrimination is, in effect, a tort action."  *Meyer v. Holley*, 537 U.S. 280, 285 (2003).  The FHA also specifically provides a civil remedy and "prohibits retaliation against any person on account of his having exercised or enjoyed a right granted or protected by the FHA."  *Gallagher v. Magner*, 619 F.3d 823, 838 (8th Cir. 2010).  The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . , any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.

[3] To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

"The basis for the *Rooker/Feldman* doctrine is that, other than in the context of habeas claims, federal district courts are courts of original jurisdiction, and by statute they are precluded from serving as appellate courts to review state court judgments, as that appellate function is reserved to the Supreme Court under 28 U.S.C. § 1257." *Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005). *See Mosby*, 418 F.3d at 931–32 (holding *Rooker-Feldman* divested the federal district court of jurisdiction over a state disciplinary committee ruling where that ruling was subject to review by that Arkansas Supreme Court).

In fact, federal district courts do not have jurisdiction "over challenges to state-court decisions . . . even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486; *see also Ballinger v. Culotta*, 322 F.3d 546, 548–49 (8th Cir. 2003) (dismissing claims under *Rooker-Feldman* doctrine where the relief requested in the complaint would effectively reverse or undermine the state court decision or void its ruling and noting that "[f]ederal district courts thus may not 'exercise jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court'" (citation omitted)). Put simply, a federal district court does not possess authority in a civil rights case to review or alter a final judgment of a state court judicial proceeding. *See West v. Crnkovich*, No. 8:12CV273, 2013 WL 2295461, at *3 (D. Neb. May 24, 2013); *see also Keene Corp. v. Cass*, 908 F.2d 293, 297 (8th Cir. 1990) (the *Rooker-Feldman* Doctrine applies to Section 1983 actions as well as claims for injunctive and declaratory relief).

Here, Plaintiff's injuries and the basis for the relief she seeks is the Sarpy County Court's April 2024 judgment in the Eviction Case finding in favor of DCHA, granting DCHA

restitution of the Rental Property, and entering a writ of restitution ordering Plaintiff's removal from the Rental Property. To grant Plaintiff the relief she seeks would effectively reverse the state court's decision or void its ruling, and *Rooker-Feldman* precludes the Court from doing so. *See Jacobs v. Gear Properties*, 2 F. App'x 617 (8th Cir. 2001) (affirming dismissal of civil rights action relating to state-court eviction in accordance with *Rooker–Feldman* doctrine). Moreover, Plaintiff has raised the underlying legal basis of her due process, discrimination, and retaliation claims in the Eviction Case, and such claims are still being litigated as the Eviction Case remains pending. Thus, Plaintiff may still seek appellate review of any decision unfavorable to her, and, under such circumstances, this Court cannot, in essence, serve as an alternative state appellate court by exercising jurisdiction over Plaintiff's claims.

To the extent the April 2024 judgment in the Eviction Case may not be a final judgment for purposes of the *Rooker-Feldman* doctrine, the Court finds that exercising subject matter jurisdiction over Plaintiff's claims would still be improper under the *Younger* abstention doctrine, as explained below.

**B. Younger Abstention**

Even if the Court assumes it has subject matter jurisdiction over Plaintiff's claims, the Court must abstain under *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." *Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 626 (1986). Indeed, to promote comity between state and federal judicial bodies, "federal courts should abstain from exercising jurisdiction

in cases where equitable relief would interfere with pending state proceedings." *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004). Under *Younger*, a federal court should abstain from jurisdiction "'when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented.'" *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005) (quoting *Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir. 1996)).

Here, each of the three *Younger* conditions is satisfied. First, the state proceedings are ongoing. Second, disputes concerning eviction and landlord-tenant proceedings implicate important state interests. *See Boyer v. Scott Bros. Inv. Corp.*, No. 4:11CV1173 HEA, 2011 WL 3847412, *6 (E.D. Mo. Aug. 27, 2011) (abstaining under *Younger* where the plaintiff challenged her eviction and finding that "[e]viction is a relatively complex procedure extensively regulated by state law, which dictates stringent notice requirements and the nature of the eviction proceedings themselves"); *Newell v. Rolling Hills Apartments*, 134 F. Supp. 2d 1026, 1036 (N.D. Iowa 2001) ("[W]here the state has so extensively regulated the relationship between private parties, as it has in landlord-tenant law, the state has the further interest in determining, in the first instance, what defenses may appropriately be raised to a forcible entry and detainer action."). Third, there is no indication that the state courts could not afford Plaintiff the opportunity for judicial review of any due process or discrimination claim (whether statutory or constitutional), particularly where, as here, Plaintiff has asserted those claims in the Eviction Case and they remain pending further adjudication. Accordingly, the Court finds abstention appropriate and, therefore, will dismiss Plaintiff's Complaint without prejudice.

## IV.  CONCLUSION

Upon review, the Court concludes that it lacks subject matter jurisdiction over Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine, as her claims arise solely out of, and seek relief from, the Sarpy County Court's judgment in favor of Defendant DCHA in the Eviction Case.  Alternatively, to the extent the Court may not lack subject matter jurisdiction over Plaintiff's claims, the Court must abstain from exercising jurisdiction pursuant to the *Younger* abstention doctrine.  Accordingly, the Court will dismiss this case without prejudice and deny Plaintiff's pending motion for a preliminary injunction as moot.

IT IS THEREFORE ORDERED that:

1.      Plaintiff's Motion for Leave to Proceed in Forma Pauperis, Filing No. 2, is granted, and the Complaint shall be filed without payment of fees.

2.      This matter is dismissed without prejudice.

3.      The Court will enter a separate judgment.

4.      Plaintiff's pending motion for a preliminary injunction, Filing No. 5, is denied as moot.


Dated this 19th day of December, 2024.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge